# EXHIBIT C

KSF
KAHN SWICK & FOTI, LLC

1100 Poydras Street, Suite 960
New Orleans, LA 70163

TEL +1 504.455.1400
FAX +1 504.455.1498
KSFcounsel.com

**NEW ORLEANS**
NEW YORK
DELAWARE
LOS ANGELES
CHICAGO
LUXEMBOURG*

February 2, 2026

Melinda A. Nicholson
Partner – Admitted in LA, NY & TX
Direct: 504.648.1842
melinda.nicholson@ksfcounsel.com

**VIA OVERNIGHT MAIL AND EMAIL**
Medical Properties Trust, Inc. Board of
Directors
c/o Nathaniel D. Cullerton, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10013-6150
*NDCullerton@wlrk.com*

**Re: Medical Properties Trust, Inc. Stockholder Litigation Demand**

Dear Mr. Cullerton:

I write in response to your letter dated January 6, 2026 ("January 6 Letter"), which acknowledged the Stockholder's November 4, 2025 litigation demand letter (the "Litigation Demand") directed to the Board of Medical Properties.[1] We appreciate your representation therein that the Litigation Demand has been referred to the Board and will be considered in due course. However, your request that the Stockholder produce evidence of his ownership at present and during the entire relevant period appears to find no support under Maryland law.

## I. THE STOCKHOLDER IS NOT REQUIRED TO PROVIDE EVIDENCE OF CURRENT OR CONTINUOUS OWNERSHIP AT THIS STAGE

The Maryland General Corporation Law does not contain specific statutory provisions governing stockholder litigation demands or continuous ownership requirements. Rather, Maryland law only states that "a shareholder does not have standing to recover against directors for acts which took place prior to the shareholder becoming a shareholder." *See Danielewicz v. Arnold*, 137 Md. App. 601, 613, 769 A.2d 274, 281 (2001). Although Maryland law is silent on what, if any, proof of stock ownership the Stockholder must submit with his Litigation Demand, Delaware law provides some guidance on this issue, and it is appropriate to consider here. *See, e.g.*, *Oliveira v. Sugarman*, 226 Md. App. 524, 538, 130 A.3d 1085, 1093 n.10 (2016), *aff'd*, 451 Md. 208, 152 A.3d 728 (2017) ("Maryland courts often look to Delaware law for guidance on issues of corporate law.").

[1] Undefined capitalized terms herein shall have the same meaning as in the Litigation Demand. Unless otherwise indicated, all emphasis herein is supplied, and all internal quotation marks and citations are omitted.

Delaware law imposes no obligation on the Stockholder to prove current or continuous ownership as a precondition for the Company acting upon his Litigation Demand. The "pleading and substantive requirements" of Delaware law do not "explicitly impose an obligation on a shareholder making demand to affirmatively prove that he or she is a shareholder in the demand letter." *Richelson v. Yost*, 738 F. Supp. 2d 589, 599 (E.D. Pa. 2010) (applying Delaware law). Instead, a stockholder may only be required to do so if, "after a reasonable investigation undertaken in good faith, the shareholder's status as a shareholder cannot be confirmed." *Id.*; *see also Iron Workers Mid-South Pension Fund v. Davis*, 2013 WL 6858567, at *6 (D. Minn. Dec. 30, 2013) (applying Delaware law and holding: "The weight of caselaw suggests that a board of directors must make some effort to determine the shareholder status of the demanding party before the board will be justified in refusing a demand on the basis that the plaintiff failed to verify its shareholder status for the Board"). Furthermore, proof of continuous ownership is also not required under Delaware law. *See Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 776 (Del. Ch. 2016), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019) (holding that Delaware law "does not require a continuing showing, which would be impractical and overly burdensome for both the party making the demand and for the company responding to it").

The January 6 Letter provides no indication that the Board has undertaken any such investigation. Thus, the January 6 Letter's request for evidence of the Stockholder's stock ownership is at best premature, and potentially "raises a reasonable doubt as to whether the Board [is] acting in good faith and with due care in response to [the Litigation Demand]." *Iron Workers*, 2013 WL 6858567, at *6.

Nevertheless, enclosed herein as **Exhibit A** are trading statements demonstrating that the Stockholder owned Medical Properties stock when the Litigation Demand was sent.[2] This is the latest statement available to the Stockholder, which is all that is required at the demand stage. *See Yahoo!*, 132 A.3d at 776 ("It takes a non-trivial amount of time to obtain documentation evidencing stockholder status. The most commonly used method is account statements, which are issued periodically."). We trust this will satisfy any purported concerns regarding the Stockholder's ownership of Company stock.

## II. <u>TOLLING AGREEMENTS</u>

The January 6 Letter provides no indication of whether the Board has obtained tolling agreements from the Alleged Wrongdoers. Accordingly, the Stockholder reiterates his demand from the Litigation Demand that the Board obtain appropriate tolling agreements from each of the Alleged Wrongdoers without further delay.

---

[2] Though proof of neither current nor contemporaneous ownership is necessary at the pre-suit demand stage, the Stockholder shall endeavor to locate updated trading statements demonstrating current ownership of Medical Properties stock. In the meantime, however, the Board must act on the Litigation Demand.

## III. GOVERNANCE REFORMS

The Stockholder's Litigation Demand demanded that, following the investigation, the Company must "undertake a comprehensive review and overhaul of [its] corporate governance and compliance practices and systems of internal controls and reporting for the purpose of not only preventing a recurrence of the failures detailed above, but also to optimize them in light of current relevant best practices." Litigation Demand at 8. As a supplement thereto, enclosed herewith as **Exhibit B** is a set of proposed governance reforms ("Reforms") for the Board's consideration. These Reforms are carefully tailored and specifically designed to prevent a recurrence of the misconduct alleged in the Litigation Demand that has damaged the Company and its stockholders. The Reforms are also designed to strengthen the Board's oversight of the Company's operations, compliance, enterprise risks, and disclosures, in line with current relevant best practices.

* * *

We look forward to the Board's consideration of the Litigation Demand. Please advise when that will occur.

Best Regards,

*s/ Melinda A. Nicholson*

Melinda A. Nicholson

Encls.

cc: William Bercury